# GRAFTON,

## JULY TERM, A. D. 1849.

---

## CHASE *v.* STEVENS & *a.*

Upon the question whether one of the defendants was a partner in a certain firm, it appeared that he was a tenant in common of certain real estate in Bethlehem, and went there and transacted some business. He contended that any acts and sayings of his, applicable to his relation as tenant, and explicable by it, were not sufficient to prove him a partner, even though, in the absence of the tenancy in common, they might tend to prove the partnership, the burden of proof being on the plaintiff.

The court instructed the jury that his taking part in the mangement of the land and cutting down and disposing of the timber, with the other tenants in common, did not necessarily make him a partner with them; that they were to weigh and consider the evidence derived from his acts and declarations, and if, upon a view of the whole case, they thought it more probable that whatever he did and said referred solely to his interest as a tenant in common, and not to his interest as a partner, they should return that verdict for the defendant. But if they believed it more probable that his acts and sayings proved him to be a partner, and did not refer solely to his interest as a tenant in common, they should find for the plaintiff.

*Held*, that the instructions were correct.

ASSUMPSIT, on a promissory note, signed " Stevens, Walker & Co."

Plea, the general issue.

It was admitted that Ebenezer Stevens, one of the defendants, signed the name of Stevens, Walker & Co. to the note; that there was at the time a firm known by that name, and that all the defendants were members of it, with

the exception of John Muzzey of Portland, Maine, who was sued as one of the partners.

The only question in controversy was, whether John Muzzey were a member of the partnership.

The business of the firm was logging, and manufacturing lumber, &c., at certain mills in Bethlehem, from which place it was sent to market. Muzzey became the owner of one fourth part of the mills, together with certain other lands, owned by the defendants in Bethlehem, on the 18th day of January, 1843. The defendant contended that whatever he did relating to the management of the property, was done on account of his interest in the land as a tenant in common with the other defendants, and not on account of his connection with them as a partner.

To prove that Muzzey was a partner, the plaintiff offered evidence, that in the fall of the year 1844, Muzzey came to the mills with Greely Hannaford, one of the defendants, and the witness understood them to say that they came to settle, but they did not say what they came to settle. In the month of December, 1846, Muzzey came there again with John and William Stevens, Walker and Greely Hannaford, one of whom were admitted to be members of the firm.

Herod Stevens, a deputy sheriff, testified that in the month of July, 1846, he attached the personal property of the firm on sundry writs, and that at the sale thereof, about the middle of December, 1846, Muzzey was present, with five of partners. Muzzey told the sheriff his name, and the sheriff conversed with Muzzey, the other defendants being present in the room, about the property advertized. During the conversation, Muzzey stopped the sheriff, and told him he desired to take some minutes, and he did take minutes of the writs, the names of the parties, and whether the debts were notes or accounts.

Another witness, William V. Gale, testified that in December, 1846, Muzzey was at the mills, with several of

the defendants, and remained there three days. He examined many of the books and papers of the firm, and stated to Hannaford the amounts due as they appeared on the books, and Hannaford wrote them down. This business was principally attended to by Muzzey and Hannaford. When Muzzey found on the books that a debt was due from the firm, he said " we are owing," &c., and when he came to an account where there was a balance due the firm, he said such a person " is owing us." The witness also stated that the sheriff requested the assent of the defendants to the sale of the property on the writs, and sometimes directed his remarks to Muzzey alone, and that Muzzey said he had nothing to say against it, if the laws of New Hampshire authorized such a proceeding, but that he did not appear to understand what our laws were.

There was, also, evidence that there were numerous papers belonging to Stevens, Walker & Co., at this time, consisting of notes, receipts, contracts and survey bills, &c.; that there were as many as 150 notes which had been taken up, more than half of which were signed Stevens, Walker & Co., in the hand-writing of Ebenezer Stevens, one of the defendants, who was the managing partner at the mills in Bethlehem, and made the contracts, &c.; that Muzzey said there were 234 notes, and he and Hannaford put them, with other papers, into a bundle. The papers had usually been kept in a trunk, and after the departure of Muzzey and Hannaford, the witness who related the above facts, never saw the trunk.

It was in evidence that in the month of August, 1843, Ether Shepley of Maine, was asked by his son if he would lend the sum of $1,000. To this he assented, provided he could have Muzzey's name. A note was brought to Judge Shepley, but he did not recollect by whom, on which he lent Muzzey $1,000. This note was dated on the 21st of August, 1843, was signed by two of the Stevenses and two of the Hannafords for $1,000, payable to Judge Shepley in a year,

and upon it was the following : " I hereby guarantee payment of the within, waiving notice and demand," and signed " Stevens, Walker & Co.  John Muzzey."  Muzzey paid the interest on the note for one year, but the note is still unpaid.  Judge Shepley called on Muzzey when the note became due, but he requested Shepley to let the note lie for a time longer.

The court instructed the jury that Muzzey was a tenant in common of the real estate in Bethlehem, and had an interest in the management of the property ; that his taking part in such management, and his cutting down and disposing of the timber with the other tenants in common, did not necessarily make him a partner with them ; that they were to weigh and consider the evidence derived from his acts and declarations, and if, upon a view of the whole case, they thought it more probable that whatever he did and said referred solely to his interest as a tenant in common, and not to his interest as a partner, they should return their verdict for the defendant.  But if they believed it more probable that his acts and sayings proved him to be a partner in the firm of Stevens, Walker & Co., and did not refer solely to his interest as a tenant in common, they should find for the plaintiff.

The counsel for the defendant moved the court to instruct the jury as follows : " It appearing that six defendants are, and since January, 1843, have been tenants in common, any acts and sayings of either of them applicable to that relation, and explicable by it, are not, in law, sufficient to prove a partnership, even though, in the absence of the tenancy in common, such acts and sayings might have a tendency to prove the partnership, the burden being on the plaintiff.

But the court declined so to instruct the jury, to which omission to instruct the defendant excepted.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, an account of the omission of the court to give the instruction according to his motion.

*Livermore*, for the defendants.

The defendants were tenants in common, with the exception of Ebenezer and Joseph Stevens. All the defendants, excepting Muzzey, were in possession, on the 18th of January, 1843, and long had been so, doing business under the name of the defendants. These facts, we suppose, are not denied.

The only question is, whether there was evidence sufficient to justify the jury in returning a verdict for the plaintiff, and whether, upon the evidence, the plaintiff's allegation that Muzzey was a partner, was proved.

All the evidence, showing Muzzey to be a partner, is reported in the case. There is no evidence of any credit being given to Muzzey, or that the plaintiff knew or supposed him to be a partner. Muzzey never held himself out as a partner. The plaintiff seeks to charge him because he was, in fact, a partner, and not because he had held himself out as such. If the jury can account for the facts by the existence of the tenancy, they cannot account for them by the supposition of a partnership. 1 St. Ev. 510.

*Bellows*, for the plaintiff.

GILCHRIST, C. J. It is sufficient to show that persons have acted as partners, and that by their habit and course of dealing, conduct and declarations, they have induced those with whom they have dealt to consider them as partners. *Ellis* v. *Jameson*, 17 Maine Rep. 238; *Evans* v. *Curtis*, 2 C. & P. 296; 2 Greenl. Ev. § 483; 3 St. Ev. 1070; Coll. on Part. § 769.

The position taken by the counsel for the defendants is, that if the jury can account for and explain the conduct of Muzzey, by the admitted fact that he was a tenant in common, they cannot regard his conduct as indicating that he was a partner. But we cannot consider this position to be sound. Let it be admitted that six of the defen-

dants, one of whom was Muzzey, were tenants in common. Muzzey went to the mills for the purpose of doing, and he did certain things. But as the existence of the tenancy in common is perfectly consistent with the existence of a partnership, he might have gone to Bethlehem for the purpose of attending to the business of the partnership, or to that of the tenancy in common. What purpose he had in going there was a question for the jury. If it had been admitted that he went for the purpose of attending to his interest in the land, then, perhaps, the question might arise which the counsel for the defendants wishes to present. But he might have gone there on account of his interest in the partnership, and whether he did or did not go there with this object, is a question of fact. Let us suppose a case, where all his acts can be explained, by referring them to his interest in the land; but let us suppose, at the same time, that the probability is by no means so great that he went there on account of the land as it is that he went there because he had an interest in the firm. Should we, in such case, adopt the lesser probability to the exclusion of the greater? This we certainly should not be authorized to do, and we do not think the proposition of the counsel can be maintained. The instructions were placed on the only proper grounds, and the question was a legitimate one for the decision of the jury.

We might add that there are other matters tending to show Muzzey's interest. What had he to do with the securities, if he were not a member of the firm? This is consistent with his being a partner, but as a tenant in common he would not ordinarily examine such matters. And although it may be said that he had an interest as a co-tenant in the disposition of the timber, it would be giving a forced construction to his conduct, to hold that he examined the securities for that purpose, when the more obvious reason would be that he had an interest in the firm.

*Judgment on the verdict.*